UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 09/12/2022

GEM CITY MANAGEMENT INC.,

              Plaintiff,

        v.

JEFFREY A. RINDE, CKR LAW LLP,
DONALD HIRSCH, MONSTER CAPITAL
CORP., and SAFARI TRADING LLC,

              Defendants.

No. 21-CV-7676 (RA)

MEMORANDUM
OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Gem City Management Inc. ("Gem City") brings this action against Jeffrey Rinde and CKR Law LLP (the "CKR Defendants"), Donald Hirsch and Monster Capital Corporation (the "Monster Defendants"), and Safari Trading LLC ("Safari"). Plaintiff initially sued Rick Siegel, the owner of Safari as well, but has since dismissed its claims against Siegel. Gem City alleges that Defendants conspired to defraud it out of hundreds of thousands of dollars by requiring it to pay advance fees as part of a fraudulent loan scheme. Plaintiff asserts claims of civil racketeering in violation of 18 U.S.C. §§ 1962(c)–(d), as well as for breach of contract, fraudulent inducement, conspiracy, unjust enrichment, conversion, and breach of fiduciary duty.

The CKR Defendants move to compel arbitration and to stay the proceedings against them and the Monster Defendants move to dismiss or in the alternative to compel arbitration. Safari, together with Rick Siegel, initially moved to dismiss the complaint for failure to state a claim. Since that filing, however, Plaintiff voluntarily dismissed Siegel and moved for default judgment against Safari.

For the reasons set forth below, the CKR Defendants' motion to compel arbitration is granted, Safari's motion to dismiss is denied as moot, and Plaintiff's motion for default judgment against Safari is denied without prejudice.  The remainder of this case is stayed pending resolution of the arbitration.

## BACKGROUND[1]

Gem City is a corporation involved in the cultivation of legal marijuana in Ohio.  Jeffrey Rinde is a co-founder and managing partner of the law firm CKR Law LLP.  Donald Hirsch is the owner, manager, and principal of Monster Capital Corp., a corporation that "purportedly specialize[s] in providing financing solutions for projects requiring at least $10 million."  Am. Compl. ¶ 23.  Safari Trading LLC is a company owned by Rick Siegel.  Gem City alleges that the CKR, Monster, and Safari Defendants all worked in concert to defraud it out of $480,000 that it deposited in escrow in order to secure a promised $12 million loan—a loan that Plaintiff never received.

In 2019, Gem City was seeking financing to develop a legal marijuana cultivation factory.  After being introduced by a representative from the Nationwide Cannabis Funding LLC, Gem City had a call with Hirsch, the principal of Monster, who pitched it a loan program. Following this call, Hirsch sent Gem City an initial proposal for Monster to provide it with approximately $12 million in financing.  He also introduced Gem City to Siegel, the principal of Safari, and "together they assured Gem City that they had successfully closed numerous other

---

[1] The Court draws the following facts from the amended complaint and the supporting declarations and exhibits attached to the parties' briefs.  *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (when deciding a motion to compel arbitration, courts may "consider all relevant, admissible evidence submitted by the parties.").

loans similar to the loan being negotiated, using an international corporation as a counterparty." *Id.* ¶ 30.

On November 12, 2019, Gem City and Monster executed a Memorandum of Understanding that outlined the proposed financing agreement. This agreement provided that, upon completion of certain conditions, including Plaintiff's deposit of $480,000 into an escrow account, Gem City would receive its initial advance of $1.2 million and a total loan in the amount of $12 million. Norton Decl. Ex. A.

Upon "express direction of Hirsch and Siegel, Rinde/CKR was retained by Monster and Gem City to act as an Escrow Agent for the transaction." Am. Compl. ¶ 32. That same day, Gem City, the Monster Defendants, and the CKR Defendants all signed and executed an Escrow Agreement. Rinde Decl. Ex. A. The Escrow Agreement provided that "CKR, as Escrow Agent, would hold Gem City's deposit of $480,000 in CKR's attorney trust account—funds that would be returned to Gem City in the even[t] the loan proceeds were not secured and delivered to Gem City through Monster, Safari, and CKR." Am. Compl. ¶ 33. In particular, the agreement assured that the funds could not be released unless and until the following two conditions were satisfied: (1) "Rinde/CKR's receipt of the SWIFT MT760 with 'Answer Back' from Monster's designated investor bank, confirming the issuance and successful transmission of funds available to Monster"; and (2) "Rinde/CKR's receipt of Monster's contractual commitment from an investor to fund the full loan amount." *Id.* ¶ 35. Plaintiff alleges that neither of these conditions were met. Despite that, Gem City asserts that Rinde, working on behalf of CKR, released the entirety of Gem City's escrowed funds, "converting the same for either Defendants' own use or to some presently-unknown third-party." *Id.* ¶ 36.

The Escrow Agreement contained the following binding arbitration provision:

> This Agreement shall be interpreted according to and subject to New York law. The Escrow Parties agree to do their utmost to ensure that any disputes between them are settled equitably and amicably and where possible without resort to arbitration.  In the event of any differences or dispute of whatever nature arising from this Agreement (which shall include any failure to agree on any matter which requires the Escrow Parties' agreement for the purposes of implementation of this Agreement) or any other matter related thereto which cannot be settled by direct negotiation within thirty (30) days after either of the Escrow Parties has notified the other parties in writing of the existence of the dispute, such differences or dispute shall be referred to and finally settled by binding arbitration in City, County and State of New York.

Rinde Decl. Ex. A § 16.   The Agreement also contained a provision regarding modifications and waiver:

> This Agreement may not be altered or modified without the express prior written consent of all of the parties to this Agreement.  No course of conduct shall constitute a waiver of any terms or conditions of this Agreement, unless such waiver is specified in writing, and then only to the extent so specified.  A waiver of any of the terms and conditions of this Agreement on one occasion shall not constitute a waiver of the other terms of this Agreement, or of such terms and conditions on any other occasion.

*Id.* § 12.

On November 25, 2019, "[g]rowing increasingly concerned with the legitimacy of the loan arrangement," Am. Compl. ¶ 37, Gem City asked Hirsch and Siegel for a written guarantee from Safari and CKR that ensured that if the loan transaction were to fail (and for some reason the deposited escrow funds could not be returned immediately), Safari would direct CKR to release $480,000 of some $10 million of Safari's funds that CKR was apparently holding." *Id.*  Rinde and Siegel signed this guarantee ("Safari/CKR Guarantee") on behalf of CKR and Safari, respectively.   On December 12, 2019, Gem City placed $480,000 in escrow with CKR.  *Id.* ¶ 40.

One week later, on December 19, 2019, Gem City and Hirsch, on behalf of Monster, entered into a Term Loan Agreement.  Norton Decl. Ex. E.  This agreement provided all of the

essential terms for the $12 million loan from Monster to Gem City, and contained a forum selection clause that stated that "[e]ach party hereby irrevocably submits to the exclusive jurisdiction of the federal courts sitting in New York, for the adjudication of any dispute hereunder or in connection herewith or with any transaction contemplated hereby or discussed herein . . . ."  *Id.* § 9.2   The Term Loan Agreement further provided that:

> This Agreement and the other Transaction Documents supersede all other prior oral or written agreements between the Investor, Borrower, their Affiliates and Persons acting on their behalf with respect to the matters discussed herein and therein, and this Agreement, the other Transaction Documents and the instruments referenced herein and therein contain the entire understanding of the parties with respect to the matters covered herein and therein and, except as specifically set forth herein or therein, neither the Borrower nor the Investor makes any representation, warranty, covenant or undertaking with respect to such matters.

*Id.* § 9.6.

That same day, Hirsch sent Gem City a guarantee (the "Monster Guarantee") that "if Gem City did not receive the initial loan payment within 100 hundred days of depositing its escrow funds with Rinde/CKR, Hirsch/Monster would take all necessary action to ensure the release of Plaintiff's funds from escrow, and terminate the Term Loan Agreement."  Am. Compl. ¶ 41.

Following the execution of these various agreements, Plaintiff alleges that Rinde took on the primary role of finding an investor and securing funds to back Gem City's loan, evidencing, as Gem City asserts, that his "role in the scheme was far more involved than that of an escrow agent."  *Id.* ¶ 47.

Gem City asserts that in the spring of 2020, it continuously attempted to contact Rinde to inquire as to the state of the loan and the escrowed funds.  In March, Plaintiff alleges that Rinde first falsely confirmed via text message that he had received the loan funds to disburse to Gem City, but then said that he had not yet received any funding for the loan, advising Plaintiff that the

funds had not yet "hit[ the] law firm's account."  *Id.* ¶ 48.  In April, Rinde again told Gem City

that he and CKR had received the funds for the loan and sent "what he described as proof of the

transfer, a fraudulent document which showed a purported transfer of $29.5 million Euros from

The Commercial Bank of Qatar to Rinde/CKR from February 26, 2020 – the same time period

when Rinde had previously informed Gem City that funds from an investor had neither been

secured nor received."  *Id.* ¶ 49.  Gem City alleges that Rinde provided a slew of excuses as to

why he was unable to release the funds, including by telling Gem City that the funding was held

up by the COVID-19 pandemic, that the funds were "held up" in London, and then that the funds

were not released due to the actions of unnamed individuals "in the middle east."  *Id.* ¶ 51.

Additionally, throughout this period, Rinde claimed several times that he was unavailable to

release the funds because he was "stuck in China" or "stuck in Cambodia" due to the pandemic.

*Id.*  Gem City asserts that all of these statements "were lies which were known to have been false

when made."  *Id.* ¶ 52.

On April 2, 2020, more than 100 days since Gem City deposited its escrow funds with

CKR, Gem City requested the return of its $480,000.  Plaintiff alleges that it was never returned

the $480,000, nor did it ever receive the promised loan proceeds.

## STANDARD OF REVIEW

Under the FAA, 9 U.S.C. § 4, "a district court must enter an order to arbitrate upon being

satisfied that the making of the agreement for arbitration or the failure to comply therewith is not

in issue."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 n.27 (1983).[2]  In

resolving a claim that an action must be arbitrated pursuant to an arbitration agreement, a court

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, omissions, and alterations.

must decide "(1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001) (omission in original); *see also Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73–74 (2d Cir. 2017).

If a movant demonstrates the existence of an agreement to arbitrate, the burden shifts to the non-movant to "show that: (i) she did not consent to arbitration, (ii) the arbitration agreement is invalid or unenforceable, or (iii) the arbitration agreement does not encompass her claims." *Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17 Civ. 04570 (LAK)(KHP), 2017 WL 7309893, at *2 (S.D.N.Y. Nov. 20, 2017), *report and recommendation adopted as modified*, No. 17 Civ. 4570 (LAK), 2018 WL 671258 (S.D.N.Y. Jan. 31, 2018).

"In deciding motions to compel, courts apply a standard similar to that applicable for a motion for summary judgment." *Nicosia*, 834 F.3d at 229. A court must therefore "consider all relevant, admissible evidence submitted by the parties" and "draw all reasonable inferences in favor of the non-moving party." *Id.* "Accordingly, if the proponent of arbitration makes out a *prima facie* case for the existence of an agreement to arbitrate, the burden shifts to the adverse party to come forward with competent admissible evidence that, if credited and given all reasonable inferences in favor of that party, would raise a genuine issue of fact for trial." *Bernardino*, 2018 WL 671258, at *1.

## DISCUSSION

### I.      Obligation to Arbitrate

#### A.      CKR Defendants

The Escrow Agreement, signed by Plaintiff and the CKR Defendants, indisputably contains

7

a binding arbitration clause that requires "any differences or dispute of whatever nature arising from this Agreement . . . shall be referred to and finally settled by binding arbitration in City, Count and State of New York."  Rinde Decl. Ex. A § 16.

By signing the Escrow Agreement, Plaintiff and the CKR Defendants entered into a valid agreement to arbitrate any disputes arising from it.  Plaintiff does not dispute this, but instead argues that the binding arbitration clause of the Escrow Agreement is invalid because it was superseded by the subsequent Term Loan Agreement.  The CKR Defendants contest this "because the CKR Defendants did not sign the Term Loan Agreement, and the subject matter of the two agreements are different."  CKR Defs.' Reply Br. at 1.  The Court agrees with the CKR Defendants.

Contracting parties are free to enter into an agreement that overrides a forum-selection clause in a prior agreement.  *See Applied Energetics, Inc. v. NewOak Cap. Mkts., LLC*, 645 F.3d 522, 526 (2d Cir. 2011).  Indeed, "[i]t is a well settled principle of contract law that a new agreement between the same parties on the same subject matter supersedes the old agreement."  *Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 793 (S.D.N.Y. 2008).  This, however, does not "apply to sequential contracts between different parties."  *Brooklyn Union Gas Co. v. NewFields Cos., LLC*, No. 19 Civ. 6363 (EK)(VMS), 2020 WL 7770993, at *5 (E.D.N.Y. Dec. 30, 2020).

"A modification of a contract requires the mutual assent of both, or all, parties to the contract. . . . Mutual assent is as much a requisite element in effecting a contractual modification as it is in the initial creation of a contract."  17A Am. Jur. 2d Contracts § 496 (2020).  As another Court in this district recently found, a later contract's forum-selection clause did not supersede a prior contract's choice of forum, in part because not all parties to the prior agreement signed the later one.  *PB Life & Annuity Co. Ltd. v. Universal Life Ins. Co.*, No.

20-CV-2284 (LJL), 2020 WL 2476170, at *10 n.6 (S.D.N.Y. May 12, 2020).

As the CKR Defendants were not parties to the Term Loan Agreement, its forum selection clause cannot supersede the mandatory arbitration clause of the Escrow Agreement. Plaintiff argues that because the Term Loan Agreement states that it "supersede[s] all other prior oral or written agreements between the Investor, Borrower, their Affiliates and Persons acting on their behalf," Norton Decl. Ex. E § 9.6, it encompasses the CKR Defendants as parties and thus overrides the arbitration clause in the Escrow Agreement. But, as previously explained, a contract can only be superseded by a subsequent contract when entered into by the same parties. This is true no matter what language the subsequent agreement contains.

Additionally, the Escrow Agreement unambiguously states that it cannot be altered or modified without the express prior written consent of all of the parties to the agreement. Rinde Decl. Ex. A ¶ 12. The fact that the parties, when signing the Escrow Agreement, did not intend for any aspect of the contract to be waived absent a signed writing by all parties, further supports the conclusion that the Term Loan Agreement cannot supersede the Escrow Agreement with respect to the CKR Defendants, regardless of its language.[3]

Accordingly, as all of Plaintiff's claims against the CKR Defendants arise out of the breach of the Escrow Agreement, they are governed by the mandatory arbitration clause. The CKR Defendants' motion to compel arbitration is thus granted.

---

[3] Plaintiff also argues that the CKR/Safari Guarantee supersedes the Escrow Agreement. Defendants respond that this was not a guaranty or a contract, but rather a letter of instruction from Safari to CKR to pay certain funds to Plaintiff when received from a third-party. In any event, the Court need not address these arguments because the Guarantee does not contain a forum selection clause or include any provision that could potentially conflict with or supersede the mandatory arbitration clause of the Escrow Agreement.

### B.    Monster Defendants

The Monster Defendants move for the Court to dismiss Plaintiff's claims against them or in the alternative to compel arbitration. The Monster Defendants argue that, as is the case for the CKR Defendants, the binding arbitration clause of the Escrow Agreement should likewise compel arbitration of Plaintiff's claims against them. This argument fails. Plaintiff does not allege a claim of breach of contract against the Monster Defendants for breaching the Escrow Agreement as it does with the CKR Defendants. Rather, the Plaintiff's dispute with the Monster Defendants arises out of the Term Loan Agreement and Monster's alleged failure to issue Gem City the $12 million loan. As Plaintiff's claims against the Monster Defendants fall outside of the scope of the arbitration clause in the Escrow Agreement, the Court need not address whether the Term Loan Agreement superseded that provision with respect to the Monster Defendants.

As detailed above, the Term Loan Agreement contains an explicit forum selection clause that represents a clear agreement to litigate in court any disputes that may arise under it. The Monster Defendants have thus failed to demonstrate that the particular dispute between the Plaintiff and themselves falls within the scope of any valid agreement to arbitrate. *See Hartford Accident & Indem. Co.*, 246 F.3d at 226. The claims against these Defendants, therefore, must be litigated in this Court.

### II.    Stay

The Court concludes that a stay of this action against all Defendants is appropriate pending the resolution of the arbitration.

The FAA requires a district court, "on application of one of the parties," to stay an action after determining that "any issue" in the action is "referable to arbitration." 9 U.S.C. § 3. In *Katz v. Cellco Partnership*, 794 F.3d 341 (2d Cir. 2015), *cert. denied*, 577 U.S. 1031 (2015), the Second

Circuit made clear that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." 794 F.3d at 347. Where, as here, some of the parties are bound by arbitration and some are not, courts routinely stay all proceedings pending the resolution of the arbitration—particularly where the arbitrable and non-arbitrable claims arise out of the same set of facts. *See, e.g.*, *Katsoris v. WME IMG, LLC*, 237 F. Supp. 3d 92, 110–11 (S.D.N.Y. 2017); *Alghanim v. Alghanim*, 828 F. Supp. 2d 636, 665 (S.D.N.Y. 2011); *Argus Media Ltd. v. Tradition Fin. Servs., Inc.*, No. 09 Civ. 7966 (HB), 2009 WL 5125113, at *3 (S.D.N.Y. Dec. 29, 2009) (collecting cases). The decision as to whether or not to stay a case under such circumstances is left to the discretion of the district court. *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997) ("[D]istrict courts . . . may stay a case pursuant to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); *see also Moses H. Cone Mem'l Hosp*, 460 U.S. at 20 n.23 ("In some cases, of course, it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of its discretion to control its docket.").

As described above, the claims against the CKR Defendants are subject to arbitration, while the claims against the Monster Defendants are not. There remains, however, significant overlap between Plaintiff's claims against the arbitrating and non-arbitrating defendants—including questions as to whether both sets of defendants conspired with their co-defendants against Gem City, fraudulently induced it to enter into the contracts, and ultimately breached those contracts. In cases with significant factual overlap between the arbitrating and non-arbitrating claims amongst different defendants, a stay may be warranted in light of the preclusive effect that the

11

arbitrator's decision may have on the litigation.  *See, e.g.*, *Alghanim*, 828 F. Supp. 2d at 665; *see also CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 77 (2d Cir. 2017) ("It is settled law that the doctrine of issue preclusion is applicable to issues resolved by an earlier arbitration.").  It is thus possible that the Monster Defendants may be able to "defensively deploy any favorable arbitral determinations to collaterally estop plaintiff from re-litigating the same issues in this action." *Alghanim*, 828 F. Supp. 2d at 665; *see also Bugoslavsky v. Kaplan*, 159 F.3d 715, 719 n.3 (2d Cir. 1998) ("[C]ollateral estoppel can be raised by a party who was not a party to the prior proceeding from which preclusive effect arises.").

Although it is premature to make any determinations as to the preclusive effect of the CKR arbitration on Gem City's claims against the Monster Defendants at this time, the Court nonetheless finds that a stay of the non-arbitrable claims is appropriate.

### III.    Safari

Finally, the Court turns to the remaining Defendant, Safari.  On January 31, 2022, Safari and Siegel moved to dismiss the Amended Complaint.  Less than two months later, Plaintiff voluntarily dismissed Siegel from this action.  Safari subsequently advised the Court that it did not intend to defend in this action, *see* Dkt. 66, and Plaintiff moved for default judgment against it.  In light of Defendant Safari's decision not to defend, its motion to dismiss is hereby denied as moot.  Moreover, given that the case will proceed in arbitration against the CKR Defendants and in this Court as to the Monster Defendants, entry of judgment against Safari would prejudice those other defendants.  *See Knowles-Carter v. Feyonce, Inc.*, Case, No. 16-CV-2532 (AJN), 2017 WL 11567528 (S.D.N.Y. Sept. 23, 2017).  The Court therefore denies Plaintiff's motion for default judgment as to Safari, albeit without prejudice to refiling once the claims against the other defendants have been resolved.

12

**CONCLUSION**

For the foregoing reasons, the CKR Defendants' motion to compel arbitration of Plaintiff's claims against them is granted, the Defendant Safari's motion to dismiss is denied as moot, Plaintiff's motion for default judgment against Safari is denied without prejudice, and this case shall be stayed.  The Clerk of Court is respectfully directed to terminate the motions pending at Dockets 36, 39, 42, and 68 and stay this case.

SO ORDERED.

Dated:      September 12, 2022
            New York, New York

_____
Ronnie Abrams
United States District Judge